F. #2020R00473
NS:JRS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | **AFFIDAVIT AND COMPLAINT IN SUPPORT OF ARREST WARRANT** |
| - against - | |
| BILAL NAGI, | 20-MJ-436 |
| Defendant. | (18 U.S.C. § 1951(a)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

JOHN LIVINGSTON, being duly sworn, deposes and states that he is a Task Force Officer with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about May 16, 2020, within the Eastern District of New York and elsewhere, the defendant BILAL NAGI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by the robbery of khat from Victim-1, an individual whose identity is known to the affiant, located in the Bronx, New York.

(Title 18, United States Code, Section 1951(a))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  I am a Task Force Officer with the Federal Bureau of Investigation, and have been since December 22, 2019. I am also a Detective with the New York City Police Department ("NYPD"). I have been with the NYPD since 2005, and a Detective since 2010. During that time I have been involved in numerous cases both long and short term, as the case Detective, and assisting, including but not limited to investigations involving the possession and distribution of narcotics, offenses involving firearms and violence/gang activities, as well as terrorism cases.

2.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation. Where I describe the statements of others, I am doing so only in sum and substance and in part.

    A.    <u>The May 16, 2020 Robbery</u>

3.  On May 20, 2020, I interviewed an individual ("Victim-1") who advised the following, in substance and in part, regarding a robbery he had been a victim of on May 16, 2020:

---

[1] Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth every fact learned during the course of this investigation.

   a. On May 15, 2020, Victim-1 received a call from 929-476-2063 (the "Telephone Number").[2] The male individual on the phone (the "Male Individual") asked if he could purchase khat from Victim-1. Victim-1 told the caller that he would let him know.

   b. The following day, on May 16, 2020, at approximately 9:45 p.m., Victim-1 received another call from the Telephone Number.[3] On this call, the Male Individual asked if Victim-1 could sell him 500 ounces of khat (which would cost approximately $2,000). Victim-1 responded that he could only provide 200 ounces of khat (approximately $800's worth). Victim-1 and the Male Individual agreed to meet in the Bronx.

   c. At approximately 11:15 p.m., Victim-1 met the Male Individual at a specified location in the Bronx.[4] The Male Individual arrived as a passenger in a white BMW. After Victim-1 gave the Male Individual two 100 ounce bags of khat, the Male Individual walked back towards the BMW without paying, saying, in sum and substance, that he wanted to show the khat to his friends.

   d. When Victim-1 followed the Male Individual, the Male Individual turned, pulled out a black handgun and told Victim-1, in sum and substance, that

---

[2] Toll records obtained from T-Mobile corroborate that the Telephone Number called Victim-1 on May 15, 2020.

[3] Toll records obtained from T-Mobile corroborate that the Telephone Number called Victim-1 at approximately 9:40 p.m. on May 16, 2020.

[4] Toll records obtained from T-Mobile indicate that the Telephone Number called Victim-1 at approximately 11:15 p.m. on May 16, 2020.

he would shoot Victim-1 if Victim-1 continued to follow him. The Male Individual then got back into the passenger seat of the BMW, which drove away. Victim-1 could see that there were three other individuals in the BMW along with the Male Individual. The Male Individual did not provide any payment to Victim-1 after taking the two 100 ounce bags of khat from Victim-1.[5]

4. I submit that there is probable cause to believe that the Male Individual who called and robbed Victim-1 is BILAL NAGI. In particular, NAGI's parents have identified the Telephone Number to law enforcement as NAGI's phone number. Victim-1 has also identified a photograph of NAGI as the man who robbed him.

5. Based on my training and experience, I know that khat is a plant that is grown in Africa and parts of the Middle East. Its leaves can be chewed for stimulant effect, and khat use is relatively common in parts of the world where khat is grown, including Yemen, and among immigrants from those parts of the world. Although khat is not itself a controlled substance, the active ingredients in khat are cathinone (a Schedule I controlled substance) and cathine (a Schedule IV controlled substance).

B. NAGI's Vehicle

6. Although I am aware that at least one associate of NAGI drives a white BMW, for the reasons set forth below, I submit that there is probable cause to believe that the vehicle NAGI used to commit the above-described robbery was, in fact, a gray BMW bearing New York license plate JNS-7354 (the "Gray BMW").

---

[5] Toll records obtained from T-Mobile indicate that Victim-1 made numerous failed attempts to call the Telephone Number from approximately 11:20 p.m. to 11:24 p.m. on May 16, 2020. The toll records (which go through June 1, 2020) show no further communications between Victim-1 and the Telephone Number after May 16, 2020.

7. I have viewed surveillance video from on or about March 27, 2020 showing an individual who, based on a comparison to known photographs of NAGI, I recognize to be NAGI stealing protective masks from a store in Brooklyn. Witnesses photographed the car that NAGI fled in after stealing the masks from the store in Brooklyn on March 27, 2020, including its license plate. I have reviewed this photograph, and the car was the Gray BMW.

8. I have also viewed a video posted on social media from on or about April 25, 2020, showing two individuals, who I recognize as NAGI and an individual who has been identified to law enforcement by NAGI's family and others as NAGI's friend and near-constant companion ("Individual-1"), standing next to the Gray BMW, with the license plate visible.

9. On or about May 10, 2020, an NYPD officer stopped the Gray BMW for speeding. The driver of the vehicle was Individual-1. I have reviewed body worn camera footage of this incident, and I recognize the passenger in the vehicle at the time of the car stop as NAGI.

10. According to NAGI's father, on or about May 22, 2020, NAGI and Individual-1 came to NAGI's father's place of business in a car. Based on my review of a still image from surveillance video of this incident, I recognize the car NAGI was traveling in as the Gray BMW.

11. I have interviewed an individual ("Victim-2") who stated that on June 2, 2020, at approximately 4:30 p.m., he was robbed in Brooklyn, New York, by three individuals, one of whom brandished a firearm. Victim-2 stated that the three men who robbed him fled in a gray BMW. Victim-2 identified photographs of NAGI, Individual-1

and another individual ("Individual-2") as the men who robbed him. Specifically, Victim-2 identified Individual-1 as the person who brandished the firearm and identified NAGI as the driver of the gray BMW in which the robbers fled. According to license plate reader ("LPR") data, the Gray BMW drove into Brooklyn over the Verrazano Bridge at approximately 3:30 p.m. on June 2 (i.e., approximately one hour before this Brooklyn robbery), and drove onto the Triborough Bridge in Queens, New York, at approximately 5:10 p.m. (i.e., approximately 40 minutes after this robbery).

12. On June 11, 2020, I participated in a stop of the Gray BMW. Among the passengers in the vehicle were NAGI, Individual-1 and Individual-2. Following the stop, NAGI was arrested on an outstanding state arrest warrant.

13. I have also reviewed LPR data for the Gray BMW from the time of the May 16, 2020 robbery of Victim-1. According to that data, the Gray BMW drove into the Bronx at approximately 10:50 p.m. on May 16, 2020 (i.e., approximately 25 minutes before NAGI met with Victim-1) on the Willis Avenue Bridge crossing the Harlem River from Manhattan into the Bronx.[6] According to Google Maps, the Willis Avenue Bridge is approximately 25 minutes away from the location of the May 16, 2020 robbery of Victim-1.

14. The LPR data also shows that the Gray BMW drove out of the Bronx at approximately 11:30 p.m. on May 16, 2020 (i.e., approximately 15 minutes after NAGI met with Victim-1) on the Bronx-Whitestone Bridge crossing the East River into Queens, New

---

[6] I am advised by an Assistant U.S. Attorney that by crossing the Harlem River, the Gray BMW traveled in the Eastern District of New York since that district is defined to include, "concurrently with the Southern District [of New York], the waters within the counties of Bronx and New York [i.e., Manhattan]." 28 U.S.C. § 112(c).

York. According to Google Maps, the Bronx Whitestone Bridge is approximately 15 minutes away from the location of the May 16, 2020 robbery of Victim-1.

15. In addition, according to LPR data, the Gray BMW was in Brooklyn, New York, from approximately 9:20 p.m. to 10:40 p.m. on May 16, 2020. Accordingly, I submit that there is probable cause to believe that NAGI was in Brooklyn at approximately 9:45 p.m. that night when he called Victim-1 to arrange the khat transaction in furtherance of the robbery conspiracy.

## REQUEST FOR SEALING

16. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant, as disclosure would give the targets and subjects of the investigation an opportunity to destroy evidence, harm or threaten witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution and therefore have a significant and negative impact on the continuing investigation that may severely jeopardize its effectiveness.

WHEREFORE, your deponent respectfully requests an arrest warrant for the defendant BILAL NAGI, so that he may be dealt with according to law.

JOHN LIVINGSTON
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by telephone this
12th day of June, 2020

THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK